REDMANN, Judge.
Plaintiff appeals from the dismissal of his suit upon an employment contract for wages for a period of disability. We affirm.
Plaintiff, a diver, was at work in the Suez Canal on June 21, 1974 in 40' to 55' of water. Circumstances prompted his surfacing, being on the surface over ten minutes, diving again, dropping to the bottom, surfacing briefly and then returning to ten feet of water for 14 minutes of decompression. Plaintiff testified he didn’t “think” that was enough decompression for such a repetitive dive. At about two o’clock the next morning plaintiff awoke with numbness in his left hand and arm and then had trouble sleeping. Defendant’s diving superintendent “considered it a possible case” of the bends. He provided 36 to 40 hours of *312 treatment in a decompression chamber. Pressure equivalent to 60' of water afforded no relief; pressures equivalent to 165' of water “seemed” to help.[1] By the time of his return to surface pressure, plaintiff experienced pain, swelling and stiffness rather than simple numbness of his hands. About June 23 or 24 plaintiff noticed that his urine was changing color. About ten days later his face began to turn yellow.
On July 5 he was hospitalized with infectious hepatitis. On July 12 he was discharged from the hospital. Plaintiff sues for wages from that date until the end of his contract on December 15.
The applicable contractual provision is garbled:
“In the event employee becomes sick, ill or injured during the period of this contract, which illness, sickness or injury contracted and/or not related to diving or salvage operation, the employee will receive no pay for the time that he is sick, ill or injured unless the illness or injury arises from flu, common cold, diarrhea or such diseases listed in International Immunization or accident received on job site.”
The most we can firmly say of this provision is that its last half stipulates “no pay” unless for (more or less) specified illness or job-site accident. Plaintiff would have us interpret the first part of the provision to grant sick pay for illness, sickness or injury related (rather than “and/or not related”) to diving operations. Were this interpretation a plausible one we would accept it because of rules construing contracts against the obligor who drafted it, C.C. 1957 and 1958. Instead, we reject this interpretation as implausible both because it appears to substitute the contradictory of the “not related” language and because it makes the later grant of pay for “accident received on the job site” superfluous; see C.C. 1946 and 1951. At best, in the absence of any evidence upon which to grant reformation of the contract, one might surmise it intended to say “which illness, sickness or injury contracted and/or [received is] not related to diving . . . .” The paragraph in any case says an employee “will receive no pay” unless for an illness specified or job-site accident.
The trial judge concluded, on ample evidence, that plaintiff’s disability came from hepatitis (although he also concluded that plaintiff had suffered the bends, to an extent “not established”, which “fades away” into insignificance by the time of hospitalization for hepatitis). We are not in a position to disagree with that factual conclusion.
Accordingly we must agree with the trial judge’s conclusion that no injury on the job disabled plaintiff and that he cannot recover on that theory.
We also affirm the implied rejection of plaintiff’s contractual interpretation that any illness related to the employment is compensable. One might conclude that, more probably than not, plaintiff would not have contracted infectious hepatitis had he not gone to the job area. The medical evidence would support such a conclusion. But — so far as we can tell — the contract only provides pay for illness “from flu, common cold, diarrhea or such diseases listed in International Immunization” and plaintiff did not show that hepatitis is so listed.
Affirmed.

. One expert testified that the fact that treatment at the simulated original depth did not relieve the symptoms “raises some question as to whether it was decompression sickness in the first place.”